P18BSMIC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                              25 Cr. 004 (PAE)

5   EDWARD SMITH,

6

7            Defendant.

8                                           Conference
    ------------------------------x
9
                                            New York, N.Y.
10                                          January 8, 2025
                                            9:15 a.m.
11

12  Before:

13
                    HON. PAUL A. ENGELMAYER,
14
                                            District Judge
15
                            APPEARANCES
16
    EDWARD Y. KIM
17       Acting United States Attorney for the
         Southern District of New York
18  BY:  REMY GROSBARD
         Assistant United States Attorney
19
    TODD A. SPODEK
20       Attorney for Defendant
21

22  Also Present:  John Moscato, U.S. Pretrial Services

23

24

25

P18BSMIC

1          (Case called)

2          MS. GROSBARD:  Good morning, your Honor.  Remy

3    Grosbard for the government, and with me at counsel table is

4    Supervising Pretrial Officer John Moscato.

5          THE COURT:  Good morning, Ms. Grosbard.  Good morning

6    Mr. Moscato.

7          MR. SPODEK:  Good morning, your Honor.  Todd Spodek,

8    and with me is Defendant Edward Smith.

9          THE COURT:  All right.  Good morning to you,

10   Mr. Spodek.  And good morning to you, Mr. Smith.  You may both

11   be seated.  This is our initial conference in the case, and

12   I've got a fair amount of ground to cover.  Before we do

13   anything else, though, I understand, Mr. Spodek, that your

14   client has not yet been arraigned on the indictment.  Is that

15   correct?

16         MR. SPODEK:  That's correct, your Honor.

17         THE COURT:  Have you reviewed with him the questions

18   I'm apt to put to him by way of the arraignment process?

19         MR. SPODEK:  Yes, your Honor.

20         THE COURT:  Mr. Smallman, will you kindly place

21   Mr. Smith under oath.

22         (Defendant sworn)

23         THE COURT:  You may be seated.  Do you know,

24   Mr. Smith, that you're now under oath, and if you say anything

25   false, your answers can be used against you in another

P18BSMIC

1    prosecution for perjury?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Kindly just move the microphone a little

4    bit closer to you.

5            What is your full name?

6            THE DEFENDANT:  Edward Gene Smith.

7            THE COURT:  How old are you?

8            THE DEFENDANT:  49.

9            THE COURT:  How far did you go in school?

10           THE DEFENDANT:  Graduated college with a BA.

11           THE COURT:  When and where?

12           THE DEFENDANT:  At Harvard College, 1993.

13           THE COURT:  Are you able to speak --

14           THE DEFENDANT:  I'm sorry, 1997.  Forgive me.  I

15    haven't had my coffee.

16           THE COURT:  Are you able to speak and understand

17    English?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Have you ever been treated or hospitalized

20    for any mental illness?

21           THE DEFENDANT:  No.

22           THE COURT:  Are you now or have you recently been

23    under the care of a doctor or a psychiatrist?

24           THE DEFENDANT:  I have not.

25           THE COURT:  Have you ever been hospitalized or treated

P18BSMIC

1   for addiction to any drugs or alcohol?

2           THE DEFENDANT:  I have not.

3           THE COURT:  In the past 24 hours, have you taken any

4   drugs, medicine, or pill or drunk any alcoholic beverages?

5           THE DEFENDANT:  I have not.

6           THE COURT:  Is your mind clear today?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Do you understand what's happening in this

9   proceeding?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Have you received a copy of the indictment

12  that has been filed in this case?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  Have you read it?

15          THE DEFENDANT:  Yes, I have.

16          THE COURT:  Have you had an opportunity to consult

17  about it with your attorney?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you want me to read it out loud or do

20  you waive its public reading?

21          THE DEFENDANT:  I don't need that read.

22          THE COURT:  You'll waive its reading?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Very good.  And how do you plead to its

25  charges?

P18BSMIC

1          THE DEFENDANT:  I plead not guilty.

2          THE COURT:  Thank you.  All right. Having then taken

3    care of the matter of the defendant's arraignment, let me just

4    go through the sequence I'd like to follow today just so we

5    have an ordinarily process.  To begin with, I'm going to be

6    turning to the government just seeking a background of the case

7    history up to this point, which is to say I understand there is

8    a search, a complaint.  Time was rolled over.  I'm curious. I

9    want to get the full history here, including the extent to

10   which time has been excluded up to this point.

11         I will then ask for a narrative description of what

12   the facts are, what underlies the three charges here.  And

13   then, and only then, I want to turn to Rule 16 discovery, and

14   I'll want to get a detailed preparation of what it consist of,

15   the means by which it will be made available to the defense,

16   particularly given the nature of some of the discovery here,

17   the means by which some of the sensitive discovery is going to

18   be accessible to defense counsel.  And given the defendant's

19   detention, a subject we'll get to later, how it will be that

20   the defendant will be able to access some of the Rule 16

21   discovery, including the more sensitive materials.

22         My practice at the initial conference -- and I don't

23   think either of you has been before me for an initial

24   conference, perhaps I'm wrong -- but in any event is to ask

25   government counsel to identify any investigative steps,

P18BSMIC

1  searches, seizures, lineups, identification procedures,

2  postarrest statements, any things that by their nature lend

3  themselves to potential suppression motions.  And I ask the

4  government simply to identify those at the initial conference,

5  because defense counsel, at the second conference, my practice

6  is to ask defense counsel to commit as to whether there's

7  anything you're moving to suppress.  And to answer that

8  question, you need to know what searches and seizures and other

9  such investigative techniques have taken place. So that's why

10 I'm going to ask AUSA Grosbard to put that on the record.

11        And then I'll have a variety of other questions for

12 you, including the likelihood of a superseder given some of the

13 representations that were made in the government's recent

14 letter, take up the issue of detention, which I understand to

15 be consented to.  But I, nevertheless, need to make relevant

16 findings, and want to understand a little more about the likely

17 trajectory of the case, and discuss with you whether to set a

18 trial date now.  And if so, when.

19        Finally at the back end of the conference, I want to

20 set a new conference date, exclude time, make the obligatory

21 Rule 6(e) statement to government counsel and address the issue

22 of victim notification.  So, a lot of topics to cover here.

23 Let's begin with the case history at this point, Ms. Grosbard?

24        MS. GROSBARD:  Your Honor, do you want me to walk

25 through from the time of the search warrant?

P18BSMIC

1      THE COURT:  I'm here to understand as much as I can,

2  so why don't you do that.

3      MS. GROSBARD:  Your Honor, a search warrant for the

4  defendant's premises was sworn out on June 24th, 2024.  That

5  search warrant was executed June 26, 2024.  Sort of, I suppose,

6  previewing some of the other issues you ask us to discuss.  At

7  the time the search warrant was executed in Mr. Smith's New

8  York City apartment, he was present.  He made voluntarily

9  statements to law enforcement while he was not under arrest.

10  And then I believe ten of his electronic devices that were

11  located inside of the apartment were seized.  They were

12  eventually searched, and the material, the volume, is quite

13  voluminous.  So, even still, I believe that process is maybe

14  even still ongoing.  I have to double check with the agent.

15      And following the search of those devices, on

16  September 6 a complaint was sworn out.  On September 10th, the

17  defendant was arrested and presented in mag court on a two

18  complaint.  One count of receipt of child pornography in

19  violation of Title 18, United States Code, Section 2252A,

20  Subsection (a)(2)(b) and (b)(1), and Title 18, United States

21  Code, Section 2.  And then one possession of child pornography

22  in violation of Title 18, United States Code, Section 2252A,

23  Subsection (a)(5)(B) and (b)(2) and 2.

24      And then at that point the government had consented to

25  the defendant's release on bail with certain conditions.  The

P18BSMIC

1    investigation continued.  And then last, I apologize, on

2    Monday, January 6, 2025, a grand jury returned an indictment

3    charging the defendant with the receipt and possession of child

4    pornography counts along with a third count for distribution of

5    controlled substances in violation of Title 21, United States

6    Code, Sections 812, 841(a)(1) and (b)(2).  To go into more of

7    the factual details behind the case?

8              THE COURT:  We'll get there in just a moment.  Just a

9    couple more questions.  I take it the time between the arrest

10   and January 6, was rolled over.  Was it consented to?

11             MS. GROSBARD:  Yes, that's correct.

12             THE COURT:  Do any of the charges as brought contain

13   mandatory sentences?

14             MS. GROSBARD:  The first count, receipt of child

15   pornography, contains a five year mandatory minimum?

16             THE COURT:  The possession does not?

17             MR. GROSBARD:  The possession does not.

18             THE COURT:  And the narcotics charge is a (b)(1)(C?)

19             MS. GROSBARD:  It's a (b)(2).

20             THE COURT:  Meaning?

21             MS. GROSBARD:  It's a five year statutory maximum.

22             THE COURT:  I see.  But no minimum?

23             MS. GROSBARD:  No minimum.  It's on the distribution

24   of Klonopin or clozapine which is a schedule four.

25             THE COURT:  Very good. Thank you.  That's very

P18BSMIC

1    helpful.  And has any time run on the speedy trial clock until

2    now, or was the time excluded by the magistrate til today?

3              MS. GROSBARD:  The time was excluded.

4              THE COURT:  All right.  Very good.  Thank you. Now to

5    the facts underlying the charges?

6              MS. GROSBARD:  The conduct related to the receipt and

7    possession of child pornography, counts are set forth in the

8    complaint, but in brief.  The defendant used Bitcoin to

9    purchase child pornography from a known producer of child

10   pornography in or about June of 2023.  There were three

11   transactions in total, approximately $1300, slightly more, I

12   don't have the exact number in front of me, of materials

13   purchased.

14             As I had mentioned, on June 26, 2024, a judicially

15   authorized search of the defendant's apartment in New York City

16   was conducted, and an image that appeared to be made by that

17   known producer of child pornography was identified on the

18   defendant's electronic devices.  At that time, he also made a

19   statement to law enforcement acknowledging that he had in fact

20   purchased material from that producer; and also acknowledged

21   that he believe some of the material depicted minors.  And, in

22   addition to that, to date law enforcement has identified

23   approximately 7,000 unique files containing child pornography

24   on the defendant's electronic devices.

25             As I've noted, the defendant also has been charged

P18BSMIC

with distribution of controlled substances.  This charge arises

from the defendant's use of Klonopin to drug an adult female

victim.

On or about April 23, 2023, the defendant sent a video

of this victim who is naked and unconscious to a telegram group

dedicated to sharing images of their drugged and passed out

sexual romantic partners.  The defendant told the group that he

had use Klonopin to drug the victim.

THE COURT:  Thank you.  That's very helpful.  Let's

talk about the Rule 16 discovery.

MS. GROSBARD:  So with respect to Rule 16 discovery,

the government has produced an audio recording of the

defendant's statement to law enforcement to defense counsel.

THE COURT:  That's the statement during the course of

the search?

MS. GROSBARD:  That's correct.  That was -- I don't

have the date, but I believe maybe several months ago at this

point.  And defense counsel has also viewed some of the CSAM

child pornography material at FBI offices.  In addition to

that, I sent defense counsel a protective order, proposed

protective order last night and understand that the defense

counsel intends to send it back to me shortly and we'll get

that entered.

THE COURT:  I assume it's standard for cases of this

nature?

P18BSMIC

1          MS. GROSBARD:  That's correct.

2          THE COURT:  Obviously as soon as I receive it in

3    signed form, I'll be happy to sign it as well.

4          MS. GROSBARD:  Thank you, your Honor.  The Rule 16

5    discovery in this case -- and this also sort of previews some

6    of your later questions, but the search warrant for the June 26

7    search of the defendant's apartment, the government obtained

8    another search warrant to expand the scope of material that

9    could be searched on the defendant's seized electronic devices

10   to include the material related to the distribution of

11   controlled substances count, and that will be produced --

12         THE COURT:  How many electronic devices approximately

13   in total were seized?

14         MS. GROSBARD:  Ten.

15         THE COURT:  Are these phones, laptops, both?

16         MR. GROSBARD:  Multiple phones, multiple laptops and

17   some hard drives.  And with respect to the device extractions,

18   your Honor mention that you're going to ask us more extensively

19   about how we intend to --

20         THE COURT:  Before we get that, I just want to make

21   sure I've identified the full universe.

22         MS. GROSBARD:  My apologies. I'll keep going then.

23         THE COURT:  I just want to get the full universe of

24   what's out there.

25         MS. GROSBARD:  There are subpoena returns from the

P18BSMIC

1    cryptocurrency exchange upon which these transactions where the

2    child pornography were made.  There's a few other returns,

3    nothing extensive, and then the FBI files.

4            THE COURT:  All right.  Does that cover every Rule 16

5    item that's in your position right now?

6            MS. GROSBARD:  I believe so, yes.

7            THE COURT:  Is there anything else that you're

8    expecting to receive that you haven't gotten yet?

9            MS. GROSBARD:  No.

10            THE COURT:  Putting aside the materials that can't be

11    reproduced, the child porn itself, what's the timeframe for

12    getting that to defense counsel?

13            MS. GROSBARD:  I think we could get it to defense

14    counsel in three weeks.

15            THE COURT:  Let's stick to that.  Okay.  Cause the

16    case has been pending for sometime now, so this day was

17    inevitable.  Let's get all the Rule 16 that is capable of being

18    reproduced to defense counsel within three weeks.

19            Now as to the material that's child porn that cannot

20    be reproduced, what's going to be the process by which, first

21    of all, defense counsel will be able to access that?

22            MS. GROSBARD:  Defense counsel has already viewed some

23    of the materials I mentioned in the FBI offices.  I believe it

24    would be made available to him again.

25            THE COURT:  All right.  In other words, it's

P18BSMIC

 1   accessible on appointment to defense counsel at the FBI.  In so

 2   far as the defendant I understand will be detained.  It's been

 3   sometime.  What are the mechanics by which a detained defendant

 4   is able to review child pornography?  Does the FBI agent

 5   accompanied by a defense lawyer go to the prison with a laptop?

 6          MS. GROSBARD:  Your Honor, I confess, I don't actually

 7   know.  I'll have to get back to you on this.

 8          THE COURT:  Let me ask you, Mr. Spodek, if you have

 9   knowledge in this area?

10          MR. SPODEK:  Yes, your Honor.  In my experience, it's

11   quite difficult.  So the likely scenario is that he would have

12   to be produced at the FBI office or the U.S. Attorney's office

13   or the court, and then a meeting would be set up where the

14   material would be shown to him.  I did have a chance -- and

15   counsel was gracious enough to set up a meeting with me and the

16   agent, I was able to see a significant amount of it.  So my

17   immediate concern is less about the underlying material, and

18   more about the file names and the file structure and the

19   metadata and where it was located and things of that nature.

20          THE COURT:  That's something obviously you should take

21   up with the AUSA.  Look, I'm going to assume that you'll work

22   smoothly together to make sure to the extent that your client

23   seeks or you seek for your client access to the

24   non-reproducible Rule 16 material, there's an easy mechanism.

25   And if it means the defendant is being produced to a conference

P18BSMIC

```
1   room at the FBI, so be it.  I don't know.  But given the nature

2   of the charges here, particularly given the, I understand,

3   relatively newer allegation of hands-on contact, it may be that

4   it's particularly important for you and your client to look at

5   the sort of seized material that is germane to that.  So,

6   Ms. Grosbard, just make sure that if there's a request by the

7   defense, you act on it promptly to help facilitate it.  I'm

8   mindful of all of the logistics issues these days, including

9   affecting the MDC and so forth.  So I'm counting on you to be a

10  force for good here in making sure that the defense can get

11  practical access easily.

12          MS. GROSBARD:  Absolutely, your Honor.

13          THE COURT:  Very good.  Turning then to searches and

14  seizures.  Our discussion has already identified a handful. Let

15  me see if I can review what I've got here, which is, there was

16  the search warrant for the apartment.  There was a successor

17  search warrant that authorized the agents to access what

18  amounts to all the electronic, the contents of all the

19  electronic devices that were seized.

20          MS. GROSBARD:  Your Honor, the original search warrant

21  for the apartment included the agents' ability to access the

22  electronic devices.

23          THE DEFENDANT:  What was the followup then?

24          MS. GROSBARD:  The original search warrant, the types

25  of material to be searched were identified as relating to
```

P18BSMIC

material depicting minor child pornography.  And then the

followup warrant was undertaken in an abundance of caution to

include the material that was found on the electronic devices

in which the defendant discussed using controlled substances

with an adult female.

THE COURT:  I see.  Same devices, broader scope of

review?

MS. GROSBARD:  Precisely.

THE COURT:  So we've got those two search warrants.

Are there any other searches and seizures?  I gather there are

new fangled search warrants really for electronic evidence, the

crypto exchange material and such.  Are there other searches or

seizures here?

MS. GROSBARD:  No, your Honor.

THE COURT:  As to statements by the defendant.  Other

than the statements that the defendant made during the course

of the execution of the search warrant, are there any other

statements, whether or not in custody from the defendant?

MS. GROSBARD:  No, your Honor.

THE COURT:  Are there any identification procedures

that were used here?

MS. GROSBARD:  No, your Honor.

THE COURT:  So, look, Mr. Spodek then, you're now on

notice that at our second conference very early on I'm going to

ask you if you intend to move to suppress anything.  Putting

P18BSMIC

1   aside your client's statements, it sounds like everything at

2   issue here was pursuant to a preceding search warrant which may

3   have implications as to whether there's a viable motion to be

4   made, but it's your right to make it if you think there's

5   something to be done there.  And then there's obviously the

6   matter of the statements which you're at liberty to challenge

7   or not.

8           But, in any event, second conference I'll be asking

9   you whether you intend to move to suppress anything.  If the

10  answer is yes, that does not mean I will immediately be

11  scheduling suppression hearing and suppression motion making.

12  Instead my question to you is likely to be at that point what's

13  the trajectory likely of this case.  And if you basically say

14  to me regardless of the disposition of such a motion, we're

15  headed towards a plea here, I'm not likely to front load a

16  suppression hearing.  On the other hand, if we're headed

17  towards a potential trial, I am likely to prioritize that.

18          MR. SPODEK:  Yes, your Honor.

19          THE COURT:  All right.  Thank you.  So let's move on

20  to superseder.  Ms. Grosbard, from the letter that you

21  submitted seeking detention, it sounded as if your Count Three

22  is a bit of a placeholder with respect to one victim, but your

23  view anyway from what you've read seem to suggest that there's

24  potentially more offenses of this nature that you're

25  investigating.  Is that right?

P18BSMIC

1         MS. GROSBARD:  Your Honor, the government is

2    continuing its investigation, but I think at this point likely

3    we will not actually be seeking a superseder.

4         THE COURT:  Is that because you don't believe there

5    are other victims out there?

6         MS. GROSBARD:  Not necessarily, but I think at this

7    point given the evidence that we have, I'm not sure we'll be

8    able to.

9         THE COURT:  All right.  Well, look, in the event that

10   you change course please let not just defense counsel, but my

11   chambers know right away, because that may have implications

12   for the schedule I'm going to setting today and whether it

13   needs to be reassessed.  But I'm going to operate on the

14   assumption on setting a schedule today that the current

15   indictment is your final answer.

16        MS. GROSBARD:  Yes, your Honor.

17        THE COURT:  All right.  Next subject involves

18   detention.  You represented that in September the defendant was

19   released on conditions.  On January 6, you submitted a letter

20   to me asking that the defendant be detained today. Pretrial

21   services in turn sent an email to my chambers that attached its

22   September report that had supported release on conditions, but

23   the cover email said, in light of the new information, they've

24   changed their view, and they believe the defendant should be

25   remanded.  And on top of that email was an email from defense

P18BSMIC

1    counsel stating that the defendant consents to his detention

2    without prejudice to the right later to seek release.

3            So, Mr. Spodek, so that we can move through this

4    quickly, you are consenting then today to the defendant's

5    detention?

6            MR. SPODEK:  Yes, your Honor.

7            THE COURT:  Ms. Grosbard, I take it the basis for the

8    detention in your letter is danger to the community?

9            MS. GROSBARD:  That's correct, your Honor.

10           THE COURT:  Not risk of flight?

11           MS. GROSBARD:  That's correct.

12           THE COURT:  All right.  Look, having reviewed the

13   government's letter on the basis of the factual representations

14   there, I certainly find that the government has carried its

15   burden.  And I take it on this one there's no shift of the

16   burden.  The burden remains with you by clear and convincing

17   evidence?

18           MS. GROSBARD:  On the receipt of child pornography

19   charge, there is a rebuttable presumption.

20           THE COURT:  Of danger?

21           MS. GROSBARD:  Yes.

22           THE COURT:  Look, either way, even if the burden were

23   on the government, given the proffer that has been made by the

24   government in its letter, I find the government to have carried

25   that burden.  And in the event the burden shifted to the

P18BSMIC

1    defense, the point is all the more clear.  But the government's

2    letter is at a minimum quite concerning, if not alarming, about

3    the risk presented to other people.  Not merely in terms of the

4    receipt of preexisting child pornography, but of potentially

5    hands on sexual misconduct along the lines that's been

6    proffered to underlie Count Three.

7            The government's letter sets out a very viable basis

8    for concern anyway that the defendant might act again in the

9    way that he's alleged to have acted with respect to Count

10   Three.  So I find the government to have met its burden, and I

11   will order the defendant's detention at the close of this

12   hearing.  My deputy is in the process right now of printing the

13   standard one sentence order that affects that ruling.

14   Mr. Spodek is without prejudice to your right as you've

15   requested to make a bail application at a later time.  I

16   understand given the new information why your judgment must

17   have been that you would need to time to adapt any application

18   to the new information.

19           MR. SPODEK:  Yes, your Honor.  Thank you.

20           THE COURT:  With that, the case has been around for a

21   while.  Let me turn perhaps to you, Mr. Spodek.  Now that the

22   government has told us that they don't expect a superseder, and

23   so we have a fix target here, what's the likely trajectory of

24   this case as best as you can project it today?

25           MR. SPODEK:  Your Honor, once I receive all the Rule

P18BSMIC

1   16 material, I will immediately make arrangements to sit with

2   Mr. Smith and go over it.  I think that certainly there's a

3   possibility of a resolution outside of trial, but I'm not just

4   in a position to say at this point.

5           THE COURT:  All right.

6           MR. SPODEK:  If it helps, your Honor, and I don't mean

7   to interrupt, if your Honor would consider perhaps not setting

8   a trial date, giving us sometime to go through the discovery, I

9   may be in a much better position in three, four weeks to give

10  insight as to what our position would be.

11          THE COURT:  Ms. Grosbard, as to that point, assuming

12  that the case were to go to trial on the three charges, have

13  you an estimate of the length of the trial?

14          MS. GROSBARD:  I approximate it would be a week.

15          THE COURT:  A week trial.  Look, Mr. Spodek, given

16  that this is a single defendant approximately one-week trial,

17  it ought to be something that if I don't schedule the trial

18  date now and we meet again in about a month, which seems to be

19  what you're proposing, it ought to be readily schedulable.  And

20  I take it from your perspective setting a trial date now isn't

21  productive.  Your client's mind is fully concentrated on this

22  already?

23          MR. SPODEK:  Yes, your Honor.  And MDC where he likely

24  will be placed is also difficult to make arrangements to get

25  access to a computer and whatnot, so it will take sometime for

P18BSMIC

1    me to set everything up for him.  I believe once I receive it

2    and we make arrangements to meet, then I could give your Honor

3    or your Honor's chambers an update as to what our position is

4    and what I think the trajectory is. If we are going to trial,

5    we can set a short trial date.

6            THE COURT:  Look, I think the realistic assessment

7    needs to be this:  That at the second conference, if you're not

8    at that point representing to me that we're heading towards a

9    guilty plea, I'm going to set a trial date, so come prepared

10   with your schedules.

11           MR. SPODEK:  Yes, your Honor.

12           THE COURT:  And Ms. Grosbard indicated that the

13   non-child porn discovery will be produced within three weeks.

14   Given that, I want to make sure that we have a next conference

15   at a time when you're fully informed.  You're able to give a

16   thoughtful answer, and I'm mindful that your client's about to

17   go into presumably the MDC where you're going to have some

18   unfortunately access issues.  Realistically, when should a next

19   conference be?

20           MR. SPODEK:  Perhaps five weeks, five to six weeks in

21   case there's some delays or sometimes there's extraction

22   issues.

23           THE COURT:  Mid-February?

24           MR. SPODEK:  Mid-February would be perfect, your

25   Honor.

P18BSMIC

1          THE COURT:  Mr. Smallman.  How about February 13th at

2     9:30?

3          MR. SPODEK:  That works for me, your Honor.

4          THE COURT:  Does that work for you, Ms. Grosbard?

5          MS. GROSBARD:  Yes, your Honor.

6          THE COURT:  I'll schedule our next conference for 9:30

7     on February 13.  Is there an application to exclude time?

8          MS. GROSBARD:  Yes, your Honor.  The government moves

9     to exclude time through February 13, 2025, in the interest of

10    justice, to allow the government to produce discovery, defense

11    counsel to review discovery, and consider any potential motions

12    and for the parties to discuss any potential pretrial

13    resolution.

14         THE COURT:  Any objection?

15         MR. SPODEK:  No objection.

16         THE COURT:  I'll exclude time between now and February

17    13, pursuant to Title 18, United States Code, Section

18    3161(h)(7)(A).  I find that the interest of justice outweigh

19    the interest of the defense and the public in a speedy trial.

20    In this case, there's potentially voluminous discovery, and

21    there's also difficult to access discovery, all made more

22    difficult by the defendant's forthcoming detention.  The

23    exclusion of time is intended to enable the defense to

24    carefully review all that material and discuss with the

25    defendant his options without the extra pressure of an expiring

P18BSMIC

speedy trial clock.  So time is excluded until then.

I am obliged to read aloud next the Rule 5(f) order.
Under the Due Process Protections Act of 2020, the court in an
initial conference is required to advise the government of its
*Brady* obligations, and to put on the docket a written order
summarizing those obligations.  So, Ms. Grosbard, here it goes.
I direct the prosecution to comply with its obligation under
*Brady v. Maryland* and its progeny, to disclose to the defense
all information, whether admissible or not, that is favorable
to the defendant, material either to guilt or to punishment,
and known to the prosecution.

Possible consequences for noncompliance may include,
dismissal of individual charges or the entire case, the
exclusion of evidence and professional discipline or court
sanctions on the attorneys responsible.  As I said, I'll be
entering a written order more fully describing this obligation
and the possible consequences of failing to meet it.  I direct
the prosecution to review and comply with that order.

Does the prosecution confirm that it understands its
obligations and will fulfill them?

MS. GROSBARD:  Yes, your Honor.

THE COURT:  Very good. Final topic for me, and then
I'll open the floor in case there's something I've missed,
involves victim notification.  How is that going to work in
this case?

P18BSMIC

1           MS. GROSBARD:  The victim of Count Three has been

2      notified of the current proceeding and will receive victim

3      notifications.  And I believe the victims of Count One and Two,

4      to the extent they're identifiable have been notified or at

5      least put in the system through the FBI.

6           THE COURT:  You're a bit hesitant in your

7      representation to that effect.

8           MS. GROSBARD:  I don't know if they've been notified

9      of this particular proceeding or the extent --

10          THE COURT:  All right. Look, let me ask you to do

11     this.  Please run that to ground, speak with the victim witness

12     coordinator at the office.  Make sure that to the extent

13     victims are identifiable, they are notified in a manner

14     consistent with the statute.  And just submit a letter, file it

15     on the docket that reports what you've found out. I'm sure

16     you'll do that, but I just want to make sure that somebody's

17     looking out for those victims' rights.

18          MS. GROSBARD:  Yes, your Honor.

19          THE COURT:  Very good.  With that, I have exhausted my

20     agenda for today. Let me go around the horn to see if there's

21     anything else to raise.  Ms. Grosbard?

22          MS. GROSBARD:  Not from the government.

23          THE COURT:  Mr. Spodek?

24          MR. SPODEK:  Your Honor, I just wanted to alert you

25     that Mr. Smith does have an open case in New York Supreme Court

P18BSMIC

1    for possession of the firearms that were referenced in the

2    detention letter.

3        THE COURT:  Yes, thank you.  I forgot to mention that.

4        MR. SPODEK:  And the next date is January 29.  I

5    represent him on that matter.  I'll be there.  Obviously he'll

6    be in custody, but I just wanted to bring that to your Honor's

7    attention.

8        THE COURT:  What's the state of that case?

9        MR. SPODEK:  It is in motion practice now.  We have

10   submitted a motion to controvert the warrant.

11       THE COURT:  What does that mean to controvert the

12   warrant?  I thought it was a federal warrant.

13       MR. SPODEK:  It is a federal warrant, but our motion

14   is that some of the underlying details that New York County has

15   provided to us were materially off, so we disputed some of that

16   internally, some of the underlining investigator's information.

17       THE COURT:  Does that have any overlap with a

18   potential motion here?  I take it the same search that yielded

19   the evidence that Ms. Grosbard is citing in support of Counts

20   One, Two and Three is the search that yielded the firearms?

21       MR. SPODEK:  Yes, there's the two warrants.  So this

22   was for the initial search warrant.  But, yes, they're

23   potentially could be some overlap.  I'm happy to provide your

24   Honor and counsel with a copy of those papers as well.

25       THE COURT:  Provide it to the government counsel.

P18BSMIC

1   We'll see if it becomes germane to any decision I need to make.

2   Let me ask you this, Ms. Grosbard, without holding you to it,

3   do the firearms play any role in the case here?

4              MS. GROSBARD:  No, your Honor.

5              THE COURT:  There aren't firearms charges, but is

6   there any theory under which they, for example, had any

7   relevance to the dealings with the victim of Count Three?

8              MS. GROSBARD:  No, your Honor.

9              THE COURT:  So at this point, that's really a separate

10  narrative.  If we get towards a trial, there may or may not be

11  a motion to confirm the exclusion of the firearms from the

12  trial.  As you're seeing it right now, they just don't have a

13  hand here?

14             MS. GROSBARD:  That's correct.

15             THE COURT:  Thank you for the heads up.  Look, if

16  there is a final determination of the case in state court, I

17  don't need regular detailed updates.  I can get that at our

18  next conference.  But if there's something fundamental

19  disposition in one direction or another, that I would welcome a

20  letter being filed on the docket of this case.

21             Anything else, Mr. Spodek?

22             MR. SPODEK:  No, your Honor.

23             THE COURT:  Very well.  Thank you, everyone, for a

24  well-prepared helpful conference.  I wish everyone a happy new

25  year.  We stand adjourned.  (Adjourned)