UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

EDWARD GENE SMITH,

Defendant.

S2 25 Cr. 4 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Defendant Edward Gene Smith is charged with receiving and possessing child pornography; distributing a controlled substance (clonazepam) to an adult woman without her knowledge and with the intent to engage in nonconsensual sexual acts; sex trafficking another adult woman by force, fraud, or coercion, and inducing her to travel to engage in unlawful sexual activity; and falsifying a document with the intent to obstruct a federal investigation. His trial is scheduled to begin on March 9, 2026.

This decision resolves the Government's motion to preclude the testimony of Jeffrey Fischbach, the defense's proposed expert in computer forensics. On November 26, 2025, the Court granted, in principal part, an earlier motion by the Government to preclude Fischbach's testimony. There were three components to that decision. First, the Court excluded Fischbach's testimony on all topics outside of computer forensics, including the opinions he proposed to offer with respect to Smith's sexual interests, Smith's relationship with the victim to whom he is alleged to have distributed narcotics for the purpose of facilitating his rape of her, and Smith's purchases from the website SexyVids.com. Second, the Court permitted Fischbach to testify about concepts in computer forensics, such as link files, the significance of modified, accessed,

and created ("MAC") data, and the creation and deletion of thumbnails. Third, salient here, the Court excluded seven opinions to which Fischbach proposed to testify (the "seven opinions"), which related to the link files and MAC data found on Smith's devices. The Court did so based on the absence of a discernible methodology used to reach these conclusions, while granting the defense leave to supplement Fischbach's disclosures to articulate that methodology.

On December 8, 2025, the defense filed Fischbach's supplemental declaration, which sets out his methodology underlying the seven opinions. The Government now moves to preclude those seven areas of testimony. For the reasons that follow, the Court denies that motion as to most of the proposed testimony, but it grants the motion as to two discrete portions.

## I.      Relevant Background

The Court incorporates by reference the background set out in its prior decisions in this case. These include an April 16, 2025 decision denying Smith's motion to suppress statements he made while interrogated during the June 26, 2024 search of his apartment pursuant to a court-authorized search warrant, *see* Dkt. 66 at 1–9; and the Court's decisions of October 2, 2025 and November 26, 2025, resolving Government motions to preclude proposed testimony by two defense experts, Dr. Laurie Sperry, Dkt. 108 at 2–3, and Fischbach, Dkt. 147 at 2–6.[1]

### A.      Fischbach's Disclosures

On August 14, 2025, the defense provided the Government with an expert disclosure as to Fischbach (the "initial disclosure"). On September 29, 2025, it provided the Government with

---

[1] On December 23, 2025, after those decisions issued, a grand jury returned Superseding Indictment S2 25 Cr. 4 (PAE), the operative indictment today. Dkt. 170. It added, to the existing four counts, two new counts, both involving a victim identified as "Victim-2." These are Count Two, which charges sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a) and (b)(1), and Count Three, which charges inducement to travel to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(a). *Id.* at 3–4.

a supplemental disclosure, titled "Jeffrey M. Fischbach Rule 16b Supplemental." Dkt. 124, Ex. C ("supplemental disclosure" or "SD"). The supplemental disclosure, the defense stated, was intended to supplement, not supersede, the initial disclosure. Dkt. 111 at 1.

On October 4, 2025, the defense provided the Government with an amended version of the initial disclosure, Dkt. 124, Ex. A ("amended disclosure" or "AD"), which deleted certain statements and observations, Dkt. 111 at 1. The supplemental and amended disclosures thus became Fischbach's operative disclosures (collectively, the "disclosures").

As set out in the disclosures, Fischbach proposed to testify about a wide range of topics. These included: computer files, thumbnails, and metadata; the ostensible "tainting" by the Federal Bureau of Investigation ("FBI") of certain electronic evidence; cryptocurrency and Telegram communications; and whether use of cryptocurrency and Telegram suggest criminal wrongdoing. Particular to Smith, Fischbach proposed to testify about the MAC data on Smith's devices, as well as Smith's search history, sexual interests, relationship with the adult woman to whom he is alleged to have distributed narcotics, participation in Telegram group chats, purchases from the website SexyVids.com, and lack of a Klonopin[2] prescription.

The defense also filed Fischbach's *curriculum vitae*. Dkt. 124, Ex. B ("CV"). It recited his employment history, board positions, membership affiliations, trainings and presentations, mainstream media citations, consulting references, and prior testimony. It reported that, since 1994, he has run a consulting firm—for corporate clients and parties in litigation—specializing in "forensic technology, evidence preservation, analysis and authentication." CV at 1. It stated that Fischbach has consulted for lawyers and law firms, *id.* at 9–14; has served on boards in the education and business sectors, advising on technology-related issues, *id.* at 2; is a

---

[2] Klonopin is a brand name for clonazepam. *See* Dkt. 23.

member of trade associations including the American College of Forensic Examiners, *id.* at 2–3; has trained or spoken to police departments, public defenders, and courts on technology-related topics, *id.* at 4–5; AD ¶ 10; has been quoted or cited in outlets including the *Washington Post* and *NPR*, CV at 6–8; and has testified in dozens of cases in state and federal court, *id.* at 15–21. Fischbach's CV did not set out his education or list his publications.

### B.      The Government's First Motion to Preclude Fischbach's Testimony

On October 16, 2025, the Government moved to preclude Fischbach's testimony. Dkt. 124.  On November 26, 2025, the Court granted that motion in substantial part.  Dkt. 147 ("Fischbach Decision").

The Court excluded Fischbach's testimony about all topics covered by his disclosures that were unrelated to computer forensics.  *Id.* at 20–21, 31–45.

As to computer forensics, the Court's analysis was as follows.  The Court first considered Fischbach's qualifications.  The Court found him qualified to testify about computer forensics because he has worked in the field since at least 1994, served on the boards of two companies as a technology advisor, presented on topics related to criminal investigations and technology, and testified as a computer forensics expert in state and federal court cases, including as to concepts about which he proposes to testify in Smith's case.  *Id.* at 16–19.  The Court recognized, as the Government had noted, that Fischbach did not have recent publications, had not disclosed his educational background, and had been criticized by courts for deficient disclosures and attempting to opine on matters audaciously beyond his expertise.  *Id.* at 17–19.  Nevertheless, the Court concluded—based on the Second Circuit's liberal application of the qualifications requirement, the fact that computer forensics by nature is a discipline in which extensive experience is apt to enhance expertise, and the similarity of Fischbach's qualifications to those of

4

forensic technologists whose testimony had been admitted by other courts—that Fischbach is qualified to testify as to the topics in his disclosures related to computer forensics. *Id.* at 18–19.

The Court then considered Fischbach's proposed testimony as to those topics. It found that his testimony about foundational concepts—such as the definitions of link files, MAC data, and thumbnails—satisfied Federal Rule of Evidence 702 and Federal Rule of Criminal Procedure 16(b)(1)(C), because that testimony "derives from sustained experience" and "has the capacity to assist the jury in grasping technical concepts," and the disclosures revealed "the terms that Fischbach will define . . . , how he will define them, and what they signify." *Id.* at 24–25.

The Court, however, did not find admissible the balance of Fischbach's proposed testimony as to computer forensics—his "seven opinions." The Court summarized these as follows:

- ***Opinion One: Link files on Smith's devices were broken.*** "Link Files found on [Smith's] devices were broken," which could be because "the file to which it resolves has been deleted, or moved," the link file was "included with downloaded folders" without "the file to which it once resolved," or the link file "once connected to a file on a network or device that is no longer connected." AD ¶¶ 87–91. "[T]he Link Files appear to have been broken at least at the time the FBI seized the devices on which the link files were found." *Id.* ¶ 100.

- ***Opinion Two: There is a lack of evidence related to the broken link files on Smith's devices.*** "[T]he government has produced no evidence of when its link files became broken" or "of its link files resolving to CSAM," *id.* ¶¶ 92–93, nor any evidence "that [Smith], or anyone else ever clicked on any of the Link Files," or that "the files to which the Link Files resolve ever existed on any of the seized devices," *id.* ¶¶ 96–97. "[T]ypically, if a file existed, additional evidence would be recoverable." *Id.* ¶ 98.

- ***Opinion Three: There is no evidence that Smith attempted to wipe the files on his devices.*** "[T]here is no evidence of Wiping, the use of, or existence of Wiping utilities, or any attempt to hide CSAM" on Smith's devices. *Id.* ¶ 99. Fischbach has not "found any evidence of VPN, TOR ('Onion'), or other forms

of encrypted or obfuscated routing," or "evidence that [Smith] ever wiped any files or drives or took any action to encrypt any files." *Id.* ¶¶ 125–26.

- *Opinion Four: There is no evidence that Smith viewed or accessed certain CSAM files.* Fischbach "has found numerous incongruities" in the FBI's "identification of CSAM files alleged to have been knowingly possessed by Edward Smith," including that "approximately 89% or 421 files contain MAC data that proves they were never viewed or otherwise accessed"; "1B1 contains 413 files which can be determined *not* to have been viewed by anyone due to matching MAC dates/times," 1B6 contains five such files, and 1B7 contains one; numerous devices contain duplicate files; and devices 1B1 and 1B6 contain files "that are within databases that contain identical dates only indicating the last time that database was accessed not a particular time a file or item was saved inside the database." SD ¶¶ 25–26 (emphasis in original); *see also* AD ¶ 117 ("[T]here are many instances where the MAC data for CSAM images is static . . . .").

- *Opinion Five: MAC data on several of Smith's devices post-date Smith's seizure and arrest.* "[T]here are thousands of instances where the MAC data for CSAM images is of a date after the device was seized by the FBI." AD ¶ 116; *see also* SD ¶ 26. In particular, "Item 1B2 contained thousands of files that post-dated its seizure and [Smith's] arrest." AD ¶ 64.

- *Opinion Six: Smith could not have viewed certain files on his devices without specialized software.* Items on 1B1 and 1B6 contain files that "cannot be accessed individually, or at all, by a user without advanced technical skills and advanced software," and "1B1 contains 8 files that were either damaged, or in a format which required advanced skills and/or specialized software to view." SD ¶ 26(b), (e). "[I]t is unlikely that Mr. Smith would have been able to" use 1B2 because the FBI was unable to do so "even with the assistance of specialized software, equipment, and expert personnel." *Id.* ¶ 46.

- *Opinion Seven: There is no evidence that Smith viewed his thumbnail files.* "[T]here is no evidence that any software existed on the devices seized by the government to facilitate the reviewing or recovery of a Thumbcache or Thumbs.db." AD ¶ 162. "[N]one of the images automatically preserved in Thumbcache or Thumbs.db were found, or recovered, as a full-size file on any of the devices seized by the government," and "there is no forensic proof that any of the images recovered from Thumbcache or Thumbs.db ever existed on any device as a full-size image." *Id.* ¶¶ 167–68.

Fischbach, the Court found, had not disclosed his methodology as to those opinions, such that his testimony failed both Rule 16 and Rule 702. Fischbach Decision at 27–29. Fischbach's disclosures stated only that he had "reviewed and/or examined discovery materials produced to

6

the defendant in this matter," "conducted an independent forensic examination of the government's evidence, using an FBI workstation at the FBI in the SDNY," AD ¶¶ 38–39, and "developed a forensically-sound chart and timeline of the files identified as CSAM," SD ¶ 24. Fischbach thus had "fail[ed] to explain how he came to his conclusions," making it impossible for the Court to "perform its required gatekeeping role." Fischbach Decision at 28–29. Accordingly, the Court held that, on the record before it, the seven opinions were inadmissible. But, it held, because trial was still three months away, the "extreme remedy of preclusion" was not required. *Id.* at 29–30 (citation omitted). The Court granted the defense leave to file a supplemental declaration setting out the methodology Fischbach had used in reaching the seven opinions. *Id.* at 30.

### C.    Fischbach's Supplemental Declaration

On December 8, 2025, the defense filed Fischbach's supplemental declaration. It states that it was "written strictly for the purposes of further detailing methodology, relative to seven specific opinions identified by the Court in the decision." Dkt. 151 ("Fischbach Decl.") at 1.

In the supplemental declaration, Fischbach represents that, in accord with his typical practice, he used the same tools the Government had used in its investigation. *Id.* at 1. He did so, he states, "in part, for continuity, and in part to avoid any chance that a different conclusion is the result of a different tool." *Id.* He states that the tools he and the Government had used have been approved by the Department of Defense Cyber Crime Center ("DC3"), a source of computer forensics expertise for the Department of Defense, and provides a link to a DC3 webpage that lists software approved for federal law enforcement and counterintelligence use. *Id.* He states that the tools he used are also consistent with the standards of the Department of

Justice and the National Institute of Standards and Technology. *Id.* at 1–2. Specifically,

Fischbach states that he used the following tools in analyzing Smith's devices:

- ***Magnet Forensics Suite***: Fischbach describes using the FBI's Magnet Griffeye ("Griffeye"), a tool made by Magnet Forensics. According to the Magnet Forensics website, Griffeye enables the swift processing and analysis of "vast amounts of images and videos," and "automatically detect[s] CSAM in large media sets." *Magnet Griffeye*, Magnet Forensics, https://www.magnetforensics.com/products/magnet-griffeye/ (last visited Jan. 16, 2026).

- ***AccessData Tools***: The DC3 validations list includes several tools made by AccessData, including a forensic toolkit, which "allows a forensic examiner to conduct analysis of various media types, including hashing and searching for keywords, as well as bookmarking, and reporting capabilities," and a forensic toolkit imager, which "lets an examiner quickly assess electronic evidence to determine if further analysis with a forensic tool is warranted." *DC3 Validations*, Dep't of Defense Cyber Crime Ctr., https://www.dc3.mil/Tools/DC3-Validations/ (last visited Jan. 16, 2026).

- ***Exterro's Forensic Toolkit***: According to the Exterro website, the forensic toolkit allows examiners to "[q]uickly locate, collect, and analyze digital evidence," and includes capabilities such as MAC data review, image identification and categorization, and system summary parsing, which enables examiners to see "every application the user opened, internet activity performed, networks the user was connected to, and where and when this activity occurred." *FTK Forensic Toolkit*, Exterro, https://www.exterro.com/digital-forensics-software/forensic-toolkit (last visited Jan. 16, 2026).

- ***Cellebrite***: Fischbach provides a link to a Cellebrite evaluation report by the National Institute of Justice Electronic Crime Technology Center of Excellence, Fischbach Decl. at 1, which states that Cellebrite "extracts vital data such as phonebook, camera pictures, videos, audio, text messages (SMS)" from phones and other devices, *Cellebrite UFED*, Nat'l L. Enf't & Corrs. Tech. Ctr. 3 (2012), https://www.ojp.gov/pdffiles1/nij/nlectc/239594.pdf.

- ***VLC Player***: Fischbach states that the VLC player, in his experience, "has been the most robust, reliable video player for damaged video files." Fischbach Decl. at 1.

- ***Thumbs Viewer***: Fischbach states that he used the Thumbs Viewer "strictly for the purposes of assessing the effect of an individual attempting to view Windows thumbnail images without forensic software." Fischbach Decl. at 1.

Fischbach states that he examined each file on Smith's devices using Griffeye and the AccessData/Exterro forensic toolkits (collectively, "FTK"). *Id.* at 2. He then specifies his methodology with respect to each of the seven opinions. *Id.* at 2–4. The Court reviews that account, below, in its legal analysis.

### D.    Procedural History of this Motion

On December 15, 2025, the Government filed its second motion to preclude Fischbach's testimony. Dkt. 157 ("Mot."). On December 24, 2025, the defense opposed. Dkt. 168 ("Opp'n"). On January 6, 2025, the Government replied. Dkt. 173 ("Reply").

## II.    Governing Legal Principles

Federal Rule of Evidence 702 governs the admissibility of expert testimony in federal court. Courts have distilled Rule 702 to require the proponent to show, by a preponderance, that "(1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact." *Nike, Inc. v. StockX LLC*, No. 22 Civ. 983, 2024 WL 3361411, at *2 (S.D.N.Y. July 10, 2024); *see In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 Md. 2542, 2025 WL 354671, at *2 (S.D.N.Y. Jan. 30, 2025).

The second requirement—"reliable data and methodology"—is salient here. "To warrant admissibility, . . . it is critical that an expert's analysis be reliable at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). A district court "has broad discretion" in assessing reliability, *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016), and "the types of factors that are appropriate to consider will 'depend[] upon the particular circumstances of the particular case at issue,'" *id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "The Second Circuit has cautioned that not every flaw in an expert

opinion warrants exclusion of the testimony." *Sec. & Exch. Comm'n v. Revelation Cap. Mgmt., Ltd.*, 215 F. Supp. 3d 267, 275 (S.D.N.Y. 2016) (citing *Amorgianos*, 303 F.3d at 266–68). The Court "should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Amorgianos*, 303 F.3d at 267 (citation omitted). "This limitation . . . accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.*

## III.    Discussion

Because the Court has found Fischbach qualified to offer expert testimony on computer forensics and that such testimony, if based on reliable methodology, would be helpful to the jury, the Court focuses its analysis on whether the seven opinions are based on reliable methodology. The Court first considers Fischbach's overall methodology, *i.e.*, his use of the forensic tools listed in his declaration. It then considers the Government's objections to the methodologies specific to each of the seven opinions.

### A.    Fischbach's Overall Methodology

Fischbach states that he used six forensic examination tools: Magnet Forensics Suite, AccessData Tools, FTK, Cellebrite, VLC Player, and Thumbs Viewer. The Government does not argue that these tools are unreliable or supply a basis to preclude Fischbach's testimony. *See* Reply at 6 ("No one disputes that Griffeye and FTK are validated forensic tools; the Government has not suggested otherwise."). The Court agrees that these tools are proper.

In evaluating non-scientific expert testimony, courts consider whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *La. Wholesale Drug Co. v. Sanofi-Aventis*, No. 7 Civ. 7343,

2008 WL 4580016, at *6 (S.D.N.Y. Oct. 14, 2008) (citing *Kumho Tire Co.*, 526 U.S. at 152). Although "general acceptance" is not a requirement, it can nevertheless "be an important factor" in assessing the reliability of an expert's methodology. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993).

The tools Fischbach used are generally accepted in the computer forensics community. FTK and tools made by Magnet Forensics and AccessData have been validated by DC3. *See DC3 Validations*, Dep't of Defense Cyber Crime Ctr., https://www.dc3.mil/Tools/DC3-Validations/ (last visited Jan. 16, 2026). FTK has also been approved by courts as a reliable method of expert forensic analysis. *See, e.g., United States v. Gardner*, 2012 WL 6680395, at *1 (D. Utah Dec. 21, 2012) (admitting testimony of computer forensics expert "who primarily used the AccessData software called Forensic Toolkit (FTK) to do his review"); *United States v. Dioubate*, 2013 WL 12064121, at *2–3 (E.D. Tex. Dec. 13, 2013) (admitting testimony where expert utilized FTK, which is "generally accepted in the computer industry as well as the legal community"). In addition, FTK and Cellebrite are widely used by law enforcement in forensic investigations. *See, e.g., United States v. Graziano*, 558 F. Supp. 2d 304, 313 (E.D.N.Y. 2008) (police investigator "searched the entire hard drive using FTK"); *United States v. Haymond*, 672 F.3d 948, 952 (10th Cir. 2012) (FBI forensic investigator examined defendant's computer using FTK); *United States v. Kamaldoss*, No. 19 Cr. 543, 2022 WL 1200776, at *5 (E.D.N.Y. Apr. 22, 2022) (Homeland Security Investigations agent extracted data from defendant's devices "using a forensic software program called Cellebrite"); *United States v. Marsh*, 568 F. App'x 15, 16 (2d Cir. 2014) (summary order) (FBI special agent used Cellebrite to download and review the contents of cellphones).

Accordingly, in using such tools, Fischbach employed the level of intellectual rigor that characterizes the practice of an expert in computer forensics. His overall methodology is sound.

### B.    The Government's Specific Objections

The Government argues that Fischbach, although listing the forensic tools he used and the data he extracted, "never explains how he interpreted those data to reach his conclusions." Mot. at 16. The defense counters that, for each opinion, Fischbach has adequately developed his manner of examination and analysis. Opp'n at 5.

### 1.    Opinion One:  Link files on Smith's devices were broken.

Fischbach proposes to testify that link files on Smith's devices were broken.

*Methodology*: The Government provided Fischbach with a spreadsheet, created by the FBI, of the seized devices and the media on those devices that are alleged to contain CSAM (the "FBI spreadsheet"). Fischbach Decl. ¶ 1(b). Fischbach used Griffeye and FTK to process each of the listed media devices. *Id.* ¶ 1(d). He "isolated any link files within the relevant devices, and examined each to identify its destination." *Id.* Of those link files, he found that "none contained any visual depictions" and "none had been identified as CSAM" in the FBI spreadsheet. *Id.* Fishbach also found "none that resolved to a path found on any of the devices provided to [him] by the FBI." *Id.* ¶ 1(e).

*Analysis*: The Government does not object to Fischbach's conclusion that link files on Smith's devices were broken, and the Court does not discern any methodological flaws in Fischbach's analysis. Fischbach is free to testify to this opinion.

### 2.    Opinion Two:  There is a lack of evidence related to the broken link files on Smith's devices.

Fischbach next seeks to opine that there is a lack of evidence related to the broken link files on Smith's devices, and that this could suggest that the files were not associated with CSAM, that Smith never interacted with the files, and that the files never existed on his devices.

*Methodology*:  Fischbach bases this opinion on the same methodology described with respect to Opinion One.  *Id.* ¶ 2(d).

*Analysis*:  The Government's principal objection is that Fischbach "never explains why broken links pointing to non-seized media support a defense-favorable inference rather than a government-favorable one—such as that [Smith] previously stored contraband on external media and later removed or copied it."  Mot. at 16.  That does not support preclusion.

The Government's objection fails because it goes to the weight and credibility, rather than the admissibility, of Fischbach's testimony.[3]  *See Bachir v. Transoceanic Cable Ship Co.*, No. 98 Civ. 4625, 2002 WL 413918, at *8 (S.D.N.Y. Mar. 15, 2002).  That Fischbach did not rule out alternative inferences supplies a sound basis to challenge his analysis, but is not a flaw so "large" that Fischbach "lacks good grounds" for his conclusions.  *Amorgianos*, 303 F.3d at 267 (citation omitted).  The proper response for the Government is to challenge this opinion during cross-examination and via the presentation of contrary expert testimony.  *See, e.g.*, *Thomas v. YRC Inc.*, No. 16 Civ. 6105, 2018 WL 919998, at *7 (S.D.N.Y. Feb. 14, 2018) ("To

---

[3] The Government cites the Advisory Committee's notes, which state that courts have incorrectly held that "critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.  But those notes also state: "[O]nce the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence."  *Id.*  Because the Court has found, by a preponderance, that Fischbach's methodology is sufficiently reliable, further attacks by the Government go to the weight of his testimony.

the extent plaintiff believes [expert] has failed to consider alternative scenarios or additional facts, his remedy is the introduction of additional evidence and cross-examination."); *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Fischbach may testify to Opinion Two.

> **3.     Opinion Three:  There is no evidence that Smith attempted to wipe the files on his devices.**

Fischbach proposes to testify that there is no evidence of any attempt by Smith to wipe or hide CSAM files on his devices.

*Methodology*: Fischbach processed the E01 images[4] of Smith's devices using Griffeye and FTK in order to recover any possible files that had been wiped from the devices and "found no evidence of any attempt to obfuscate." Fischbach Decl. ¶ 3(d). He then confirmed that the operating systems on Smith's devices did not have a wiping feature, and "searched for known wiping applications." *Id.* Fischbach states that this is "typically an automated process," but that he "conducted this search manually" because the necessary software was "not available on the FBI workstation." *Id.*

*Analysis*: The Government makes two arguments in support of preclusion. Neither is availing.

First, the Government argues that Fischbach's methodology is inadequate because he failed to explain "what his manual search entailed"—*e.g.*, "how comprehensive it was, what directories he examined, [and] what, if any, search terms or indicators he used." Mot. at 17. Although Fischbach's summary is not a model of clarity or specificity, he provides sufficient

---

[4] Based on Fischbach's declaration, the Court understands an E01 image to be a clone of the original device.

detail to enable the Government to discern his approach, which consisted of searching Smith's devices for wiped files or wiping applications. It thus satisfies *Daubert*. *See, e.g.*, *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006), *aff'd*, 552 U.S. 312 (2008) ("An expert opinion requires *some explanation* as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." (emphasis added)); *Dunham v. Lobello*, No. 11 Civ. 1223, 2023 WL 3004623, at *11–12 (S.D.N.Y. Apr. 19, 2023) (admitting expert testimony over objection that expert "fail[ed] to provide any methodology" where expert described approach at high level of generality (citation omitted)); *United States v. Brooks*, No. 6 Cr. 550, 2010 WL 291769, at *3 (E.D.N.Y. Jan. 11, 2010) ("lack of clarity" in expert disclosure "does not preclude his testimony" where method of examination was "sufficiently reliable").

Second, the Government argues that "Fischbach provides no analytical framework for interpreting the negative results he reports he found." Mot. at 17. The Government argues that, because users "can attempt to conceal contraband through numerous means," it does not follow from the absence of certain wiping software that Smith "engaged in no concealment behavior." *Id.* at 17–18. That critique is valid, and again may supply a strong basis for cross-examination, as there are many ways that Smith might have attempted concealment (*e.g.*, by "manually deleting files, storing files on removable media that can be hidden or destroyed, [or] using encrypted or password protected containers," *id.* at 18). But it does not justify excluding the testimony. *See Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 287 (S.D.N.Y. 2011) ("The grounds for the expert's opinion merely have to be good, they do not have to be perfect." (citation omitted)). Because Opinion Three is supported by Fischbach's representation that he did not find, on Smith's devices, evidence of deleted files or

file-wiping utilities, it is admissible. The Government is at liberty to question Fischbach about mechanisms of concealment that he did not consider or explore.

### 4.    Opinion Four:  There is no evidence that Smith viewed or accessed certain CSAM files.

Fischbach seeks to opine, first, that MAC data from devices 1B1, 1B6, and 1B7 show that certain CSAM files on those devices were never viewed or otherwise accessed, and, second, that 89% of Smith's files contain MAC data showing that they were never accessed.

*Methodology*:  Fischbach used Griffeye and FTK to produce a spreadsheet of the E01 images provided to him. Fischbach Decl. ¶ 4(d). He compared that spreadsheet to the FBI spreadsheet and found the two identical. *Id.* He then sorted the entries on the FBI spreadsheet by access date and analyzed the MAC data. *Id.*

*Analysis*:  The Government raises numerous objections to Opinion Four. The Court denies the Government's motion to preclude the first component of this proposed testimony, but grants it with respect to the second component.

As to Fischbach's statements related to static MAC data on devices 1B1, 1B6, and 1B7, the Government's objections do not warrant preclusion.

The Government, first, argues that Fischbach's analysis is unreliable because he fails to address "the many alternative causes of static timestamps," Reply at 15, such as "a background or system process at or near the time of creation," Mot. at 11. Again, this critique goes to the weight—not the admissibility—of Fischbach's testimony. *Figueroa v. Bos. Sci. Corp.*, 254 F. Supp. 2d 361, 367 (S.D.N.Y. 2003) ("[E]ven assuming that [expert] did not rule out alternative causes . . . that argument goes to the weight of the evidence rather than its admissibility").

The Government next argues that Fischbach's methodology "amounted to no more than reading a spreadsheet and sorting by date." Mot. at 13. But an expert "may form his conclusions

by applying his extensive experience to the facts of the case." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2008 WL 1971538, at *10 (S.D.N.Y. May 7, 2008); *see also Kumho Tire Co.*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). Here, although Fischbach's sorting of the FBI spreadsheet might not have required specialized knowledge, his analysis of the significance of static MAC data on it is based on his experience in the field of computer forensics. This testimony is admissible.

The Government next argues that Fischbach's proposed testimony is improper because he opines as to "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." Mot. at 15 n.3 (quoting Fed. R. Evid. 704(b)). The Court has already precluded Fischbach's proposed testimony as to Smith's mental state.[5] But testimony to the effect that Smith never accessed a file on a specified device or devices is distinct from testimony that Smith never knowingly possessed that file. Access and knowledge are not the same. A defendant, for example, who downloaded a folder of CSAM without viewing or accessing it could know that it contained CSAM by various means, including, for example, based on a suggestive file name (*e.g.*, "2007 Tara 8Yr – Ass Fuck," Dkt. 124 at 5). Fischbach's testimony that—based on forensic analysis—Smith did not view or access the files is therefore not the equivalent of testimony that Smith's lacked knowledge that he possessed CSAM. Rule 704(b) does not bar such testimony.

---

[5] In the Fischbach Decision, the Court precluded all of Fischbach's proposed testimony as to Smith's mental state, Fischbach Decision at 44–45, including the conclusion that "the evidence is clear that [Smith] never interacted with that file and thus never knowingly possessed that image," AD ¶ 117. Accordingly, to the extent that the Government bases its Rule 704(b) argument on that opinion, Reply at 11, it is moot.

The second component of Opinion Four, however, requires preclusion. Fischbach would opine that "approximately 89% or 421 files contain MAC data that proves that they were never viewed or otherwise accessed." SD ¶ 26(a). But, as the Government notes, Fischbach "does not explain how he generated the '89%' figure, what universe of files it covers, [and] what criteria governed inclusion in that category." Mot. at 12. That critique is fair. Indeed, the Court made the same point in its initial decision, in which it noted that Fischbach "fails to explain how he came to his conclusion[] . . . that a large number of the files found on Smith's devices (specifically, 89%) were never viewed or accessed." Fischbach Decision at 28. Fischbach's failure—despite having been given a do-over—to explain how he arrived at this figure, or the universe of files or devices that underlay this analysis, requires its preclusion. In addition, as the Government notes, Reply at 11–12, Fischbach's statement that the MAC data "*proves*" non-access, SD ¶ 26(a) (emphasis added), improperly "undertakes to tell the jury what result to reach." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (citation omitted). Thus, for multiple reasons, the Court precludes Fischbach from testifying as to this point.

### 5.    Opinion Five:  MAC data on several of Smith's devices post-date Smith's seizure and arrest.

Fischbach seeks to testify that MAC data on device 1B2 post-dates Smith's seizure and arrest, which could support that Smith never interacted with certain files or that the FBI tainted or altered the evidence.

Evaluation of this testimony requires a review of events relating to 1B2 since its recovery by the FBI from Smith's home. 1B2 is alleged to contain the bulk of the CSAM recovered in this case (approximately 6,000–7,000 files). 10/6/25 Tr. at 61. The Government was initially unable to recover all the files on that device, or make a complete forensic copy of it, due to its damaged hard drive. 9/10/25 Tr. at 15–16. Accordingly, the Government created a "partial

clone," 10/6/25 Tr. at 55, known as "1B15," along with a spreadsheet containing the metadata from the original 1B2 hard drive, 9/10/25 Tr. at 43–44.  In July 2025, the Government provided the defense with a copy of 1B15 and the 1B2 spreadsheet.  *Id.*  That copy of 1B15, however, was found to contain a "metadata error," 10/6/25 Tr. at 56, in that it contained metadata that did not correspond to the metadata on the 1B2 spreadsheet, *id.* at 67.  On October 20, 2025, after alerting to this error, the Government informed the Court that, on October 14, it had provided a "better copy" of 1B15 to the defense ("revised 1B15"), and that it was also in the process of sending 1B2 back to the FBI's Digital Forensic Analysis Unit in Alabama to attempt another partial clone of that device.  10/20/25 Tr. at 4.  On November 24, 2025, the Government informed the Court that the reprocessing of 1B2 was complete, that a new derivative of 1B2 ("1B18") had been sent to the FBI's headquarters in New York, and that the derivative would be made available to the defense in early December.  11/24/25 Tr. at 23.  On December 5, 2025, Fischbach visited the FBI's headquarters to examine 1B18.  12/22/25 Tr. at 6.

*Methodology*:  Fischbach processed the E01 images using Griffeye and FTK and reviewed the MAC data using the spreadsheet method described with respect to Opinion Four.  Fischbach Decl. ¶ 5(d).  He then conducted a search "for files which had a file access date after the devices were seized."  *Id.*  Fischbach represents that he did not analyze the 93,268 files on device 1B18, which, the Government has represented, remedied the MAC data issue that is the subject of this opinion.  *Id.* ¶ 5(e).  He states that he is "unclear" whether that opinion would change were he to undertake further analysis of that device, *id.*, but he "is extremely unlikely" to "disavow any opinion" on this point, *id.* at 5.

*Analysis*:  For the reasons that follow, the Court grants the Government's motion to preclude Opinion Five.

The Government argues that Fischbach's failure to reconsider his opinion based on revised 1B15 requires exclusion. The Government argues that the corrected copy of IB2 renders Fischbach's MAC-timestamp analysis, which was based on an earlier and deficient copy of 1B2, out-of-date and unreliable. Mot. at 13–14. Moreover, the Government represents that Fischbach has had access to revised 1B15 "for months," and that, contrary to the premise of the opinion Fischbach proposes to give, that device clearly contains "timestamps that *predate*" the search and seizure of Smith's devices. *Id.* at 14 (emphasis in original). The defense does not respond.

The Government is correct.

Opinion Five solely concerns MAC data on device 1B2 that—Fischbach would opine—post-dated Smith's arrest and the seizure of his devices.[6] *See* SD ¶ 26(c) (stating that 1B2 was shown to Fischbach, who identified to the FBI agent that "the MAC dates were incongruent, specifically, post-dating the seizure of the device"); AD ¶¶ 64 (stating that "1B2 contained thousands of files that post-dated its seizure and the defendant's arrest"); 116 (stating, in apparent reference to 1B2, that "in 1B evidence provided to him in this case there are thousands of instances where the MAC data in CSAM images is of a date after the device was seized by the FBI"). Fischbach based these conclusions on his review of the original 1B15, and stated them in his disclosures of September 29 and October 4, 2025. However, less than two weeks later, on October 14, 2025, the Government gave the defense access to revised 1B15, which "remedied the earlier, inadvertent metadata discrepancies in 1B15." Mot. at 8. And on December 5, 2025, the Government provided the defense access to 1B18, a new forensic copy of 1B2 that similarly

---

[6] The Court's original summary of Opinion Five described it as applying to MAC data on "several of Smith's devices." Fischbach Decision at 26. However, that opinion only refers to MAC data on 1B2. Thus, although the Court retains its original phrasing for consistency, Opinion Five solely concerns 1B2.

addressed 1B15's metadata issue. *Id.* at 9. Despite having had access to revised 1B15 and 1B18, Fischbach failed to revise Opinion Five based on those devices. He does not address them at all in his recent declaration (filed on December 8, 2025), except to state, in a conclusory fashion, that any new evidence "is extremely unlikely to cause [him] to disavow any opinion." Fischbach Decl. at 5. Notably, the defense neither sought more time to enable such a review, nor raised any issues with respect to the integrity of revised 1B15 or 1B18.[7]

Fischbach's failure to consider the updated copies of IB2 in his analysis is a glaring lapse that renders his conclusion as to 1B2's metadata "so fundamentally unsupported that it can offer no assistance to the jury." *Bocoum v. Daimler Trucks N. Am. LLC*, No. 17 Civ. 7636, 2022 WL 902465, at *6 (S.D.N.Y. Mar. 28, 2022) (quoting *Hollman v. Taser Int'l Inc.*, 928 F. Supp. 2d 657, 670 (E.D.N.Y. 2013)); *see also In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 242 (S.D.N.Y. 2018) ("Where an expert ignores evidence that is highly relevant to his conclusion . . . exclusion of the expert's testimony is warranted."), *aff'd*, 982 F.3d 113 (2d Cir. 2020). Because Opinion Five is based on deficient and outdated copies of the original 1B2, and because Fischbach has declined to reassess his opinion based on corrected data, it is both untrustworthy and irrelevant. Accordingly, such testimony must be excluded.

---

[7] At the past several status conferences, the Court has inquired of the defense as to the status of Fischbach's review of forensic evidence. The defense has represented that his review was proceeding apace without incident. At a December 22, 2025 conference, defense counsel represented that he and Fischbach had gone to the FBI facility and that "[the FBI agents] were lovely and we had a good time." 2/22/25 Tr. at 6–8. And at a January 13, 2026 conference, defense counsel stated that Fischbach had reviewed 1B18 and had not been denied any opportunity to review it.

6.    **Opinion Six:  Smith could not have viewed certain files on his devices without specialized software.**

Fischbach proposes to testify that it is unlikely that Smith, lacking advanced skills or specialized software, would have been able to access certain files on devices 1B1 and 1B6, or to use device 1B2 at all.

*Methodology*:  Fischbach observed that numerous files flagged as CSAM on the FBI spreadsheet "could not be opened with the software available at the time of the seizure on Smith's devices."  Fischbach Decl. ¶ 6(c).  Fischbach then used Griffeye and FTK to examine the files listed on the FBI spreadsheet "for both data and content."  *Id.* ¶ 6(d).  He identified the files that could not be viewed with the software on Smith's devices, examined those files for "file errors," and opened them using a VLC player, "strictly for the purposes of describing content to defense counsel."  *Id.*  He searched the E01 images of Smith's devices for the presence of VLC or equivalent software, and found none presently installed or previously deleted.  *Id.*  Fischbach states that "it is *possible* that [Smith], at some point in time, had VLC or similar software on some piece of equipment," but, he adds, "there is no information to indicate that he ever had this software on the seized devices."  *Id.* ¶ 6(e) (emphasis in original).

*Analysis*:  The Government objects to this testimony on three grounds.  These objections do not support preclusion.

First, it argues that Fischbach's inability to open certain files now "says nothing about whether Smith could have opened or viewed those files at any earlier point."  Mot. at 19.  That is an overstatement.  The present lack of specialized software on Smith's devices does not conclusively establish that Smith could not have accessed the files at an earlier point, but it supplies a fair basis for the opinion that, assuming the same software present now was present then, it is unlikely that the files could have been accessed.  Because expert testimony need not be

22

absolute to be admissible, this objection does not provide a basis for preclusion. *See, e.g., In re M/V MSC FLAMINIA*, No. 12 Civ. 8892, 2017 WL 3208598, at \*23 (S.D.N.Y. July 28, 2017) ("an expert need not testify with certainty or eliminate all other possible conclusions"); *United States v. Carneglia*, 47 F. App'x 27, 32 (2d Cir. 2002) (summary order) ("An expert's opinion must be more than 'subjective belief or unsupported speculation,' but need not reach the level of 'known to a certainty' to be admissible." (quoting *Daubert*, 509 U.S. at 590)).

Second, the Government argues that Fischbach's "concession"—that Smith's devices might at some earlier point have contained software that enabled him to access the presently inaccessible files—"is fatal." Mot. at 19. Quite the contrary, Fischbach's qualification of his conclusion, if anything, strengthens its reliability. Notably, the Government elsewhere argues that Fischbach's opinions should be precluded because they are unduly certain. *See* Reply at 10.

Third, the Government argues that Fischbach fails to rule out "obvious alternative explanations," such as that Smith opened videos directly in his web browser or used a portable media player. Mot. at 19. That critique again is apt fodder for cross examination. But although an expert's failure to consider "obvious alternative explanations" may support preclusion, *see In re Gen. Motors LLC Ignition Switch Litig.*, No. 14 Civ. 5810, 2017 WL 6729295, at \*10 (S.D.N.Y. Dec. 28, 2017), an expert "is not required to rule out every possible alternative," *Mehle v. Bodum USA, Inc.*, No. 24 Civ. 2740, 2025 WL 2732887, at \*6 (S.D.N.Y. Sept. 25, 2025) (citation omitted). That Fischbach did not address all video viewing mechanisms that were potentially available to Smith does not render his analysis "so unrealistic and contradictory as to suggest bad faith." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). Fischbach did not fail to address "evidence that contradicts his conclusions." *Cedar*

23

*Petrochems., Inc.*, 769 F. Supp. 2d at 287 (citation omitted). And he accounted for alternative explanations in his analysis, such as that Smith had VLC or similar software at some earlier point in time—a possibility he deemed unlikely based on his finding that "wiping software was not found, and the devices were not full to capacity, [and] there is no information to indicate that he ever had this software on the seized devices." Fischbach Decl. ¶ 6(e). Fischbach's failure to consider the alternatives identified by the Government thus does not require preclusion of this area of testimony. *See, e.g., Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, No. 7 Civ. 194, 2011 WL 13228299, at *2 (D. Conn. Jan. 21, 2011) (admitting testimony of computer forensics expert over objection that he "failed to entertain alternative explanations in drawing his conclusions," because this "can be adequately explored on cross examination" (citation omitted)); *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 9 Civ. 5935, 2011 WL 3874878, at *9 (S.D.N.Y. Aug. 31, 2011) (admitting testimony that failed to consider alternative scenarios because expert "need not disprove all other explanations for his testimony to be considered"); *Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*, No. 21 Civ. 10779, 2023 WL 8280139, at *2 (S.D.N.Y. Nov. 30, 2023) (admitting testimony where expert "made some effort to account for alternative explanations" (citation omitted)).

> 7.    **Opinion Seven: There is no evidence that Smith viewed his thumbnail files.**

Fischbach, finally, seeks to testify that Smith's devices lacked software to facilitate review of Thumbcache or Thumbs.db files, and that there is no evidence that any images recovered from such files ever existed on his devices as full-size images.

*Methodology*: Fischbach processed the E01 images using Griffeye and FTK and extracted the thumbnails. Fischbach Decl. ¶ 7(d). He tested each thumbnail file, using the same forensic examination tools, to search for "remnants of a thumbnail extraction by a user," and

found none. *Id.* He then "searched each device for all non-forensic software available to the public for the purposes of extracting thumbnail images, and found none." *Id.* Fischbach notes that "there is no evidence *proving* that [Smith] *did not* access the contents of hidden thumbnail files," but states that "at the time of seizure, he had no tools or applications found to allow for a user to extract thumbnails from files hidden by the Windows OS." *Id.* ¶ 7(e) (emphasis in original). Fischbach acknowledges that "it is possible that [Smith] once had such software capability," but states "none was found, and no software was found to hide traces of such software." *Id.*

*Analysis*: For much the same reasons as with Opinion Six, the Government's objections to this opinion are unavailing.

The Government argues that Fischbach overlooks that Smith could have opened thumbnails "in the ordinary way that Windows users may do"—*i.e.*, by viewing them through Windows Explorer or other web browsing—rather than through forensic extraction tools, which are "designed for forensic professionals, not ordinary users." Mot. at 20. The Government also argues that Fischbach's "admission"—that it is possible that Smith at an earlier time had the software capability to view thumbnails—undermines his conclusion. *Id.* at 21. But, again, Fischbach need not rule out all possible alternatives, nor opine with complete certainty, for his testimony to be admissible. The Government's critiques reveal fertile ground for cross examination, but they do not provide a basis for preclusion.

The Government next contends that Fischbach's methodology lacks necessary detail because he "does not explain what he means by 'software available to the public.'" *Id.* at 20. That is not disqualifying. Fischbach provides sufficient information to enable the Government to discern his approach, which involved searching Smith's devices for forensic and non-forensic

25

software that would have enabled him to view thumbnail files. The Government will be free to question Fischbach about, and attack his testimony based on, the specific search terms he used. *See, e.g., Reyes v. Delta Dallas Alpha Corp.*, No. 92 Civ. 4418, 2000 WL 526851, at *2 (S.D.N.Y. May 2, 2000) ("specifics" of methodology "can be explored by defendant on cross examination"). But such is not a basis for preclusion.

## CONCLUSION

For the foregoing reasons, the Court denies the Government's motion to preclude Fischbach's testimony, save as to a component of Opinion Four, and as to Opinion Five.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 157.

SO ORDERED.

*Paul A. Engelmayer*

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: January 16, 2026
　　　　New York, New York