Miranda Rosenberg, Psy.D., PLLC
Licensed Clinical Psychologist

**Confidential**
**Summary of Forensic Psychological Evaluation**

**Background:**

I am a licensed clinical psychologist with specialty training in evidence-based clinical and forensic assessment. I obtained my doctorate in clinical psychology from Yeshiva University/Albert Einstein College of Medicine and completed my internship with a specialty in neuropsychology at the Icahn School of Medicine at Mount Sinai. I have received training in clinical, forensic, and neuropsychological assessment in facilities across New York City, including NewYork-Presbyterian Hospital/Weill Cornell Medical College, Icahn School of Medicine at Mount Sinai, NYC Health + Hospitals/Gouverneur, and the New York State Department of Corrections. I previously worked in the Forensic Psychiatry Evaluation Court Clinic under NYC Health + Hospitals/Correctional Health Services, performing court-ordered psychological evaluations, and later served as Deputy Director of Fifth Avenue Forensics, a private forensic psychiatric group practice, where I conducted forensic psychological and neuropsychological evaluations. I currently own and operate my own private practice, where I conduct forensic psychological and neuropsychological evaluations addressing psycho-legal questions in criminal cases at both the state and federal levels. I maintain contracts with multiple jurisdictions across several states to perform court-ordered evaluations, including assessments of adjudicative competence, criminal responsibility, and violence risk. In addition, I serve as an Adjunct Professor at the Ferkauf Graduate School of Psychology at Yeshiva University. I have previously been retained and worked with defense counsel and prosecutorial authorities.

**Introduction:**

**NAME:** Edward Smith
**DATE OF EVALUATION:** August 21, 2025
**DATE OF REPORT:** September 4, 2025

Mr. Edward Smith is a 50-year-old man, born on ███████████. Mr. Smith has been indicted on charges of Receipt and Distribution of Child Pornography, Possession of Child Pornography, and Distribution of A Controlled Substance in the United States District Court, Southern District of New York. Mr. Smith was referred for a forensic psychological evaluation by Ms. Remy Grosbard, Esq., Assistant United States Attorney, United States Attorney's Office Southern District of New York, for the purposes of diagnostic clarification and to provide an expert opinion in response to the Defense's Expert Disclosure dated August 14, 2025. According to the Defendant's Expert Disclosure,

> *"Dr. Sperry's expert testimony will aid the trier of fact in comprehending how Mr. Smith's diagnosis of Autism Spectrum Disorder (ASD) might have influenced his suggestibility, comprehension, and responsiveness during the interrogation on June 26. Dr. Sperry's expert report delineates opinions, along with the rationale for those opinions, regarding how individuals with ASD may react to similar situations, particularly in moments of stress.*

m@rosenbergpsych.com

*Furthermore, Dr. Sperry's testimony will encompass both general insights and specific evaluations derived from her assessment of Mr. Smith."*

Mr. Smith is currently detained at the Metropolitan Detention Center. The evaluation was conducted virtually (via videoconference) on August 21, 2025. Defense Counsel, Mr. Sean McCabe, Esq., was present and observed. At the outset of the assessment, Mr. Smith was informed of the nature and purpose of the evaluation. He was explicitly advised that the interview was not confidential, that no treatment relationship would be established, and that a written report would be prepared and disclosed to the Court and involved parties. He demonstrated understanding of these limits to confidentiality and voluntarily agreed to participate in the evaluation.

**<u>Collateral Sources of Information:</u>**

1. Legal Documents/Discovery:
   a) Cellebrite Extraction Report, Telegram Conversation
   b) Photographs of Defendant's Apartment
   c) Audio recorded interview of Mr. Edward Smith, dated June 24, 2024
   d) Indictment, United States of America v. Edward Gene Smith, United States District Court, Southern District of New York
   e) Defendant's Expert Disclosure, United States of America v. Edward Gene Smith, United States District Court, Southern District of New York, dated August 14, 2025
   f) Expert Report, authored by Laurie Sperry, Ph.D., BCBA-D, MSc, dated May 30, 2025
      - Laurie Allyn Sperry, PhD., BCBA-D, LBA Curriculum Vitae
      - Document entitled "EdwardSmithSpouseNarrative (jan5)"
      - Document entitled "Heather Rodgers Narrative dated 2025.01.05 - Tyler Whitney"
      - Document entitled "8.1.25 follow up with Heather Rodgers"
      - Document entitled "Geoff Beach Interview dated 2025.03.31 - Laurie Sperry"
      - Document entitled "Questions re Smith_undated"
      - Document entitled "Edward Smith Interview dated 2025.03.17 - Laurie Sperry"
      - Document entitled "Edward Smith PCP dated 2025.03.16 - Laurie Sperry"
      - Autism Diagnostic Interview-Revised, Interview Protocol, dated April 2, 2025, and April 5, 2025
      - ADOS-2 Protocol, not dated
      - Social Responsiveness Scale, Second Edition, Score Report, completed by Heather Rodgers, dated January 3, 2025
      - Social Responsiveness Scale, Second Edition, Score Report, completed by Edward Smith, dated January 3, 2025
      - Vineland Adaptive Behavior Scales, Third Edition, Comprehensive Parent/Caregiver Form Report, completed by Heather Rodgers, dated January 5, 2025

- - Vineland Adaptive Behavior Scales, Third Edition, Comprehensive Parent/Caregiver Form Report, completed by Heather Rodgers, dated March 28, 2025
  - Camouflaging Autistic Traits Questionnaire Score Report, dated March 16, 2025
  - Empathy Quotient Score Report, dated March 16, 2025
  - Behavior Rating Inventory of Executive Functioning, Second Edition, Interpretative Report, Informant Report Form, completed by Heather Rodgers, dated March 26, 2025
  - Behavior Rating Inventory of Executive Functioning, Second Edition, Interpretative Report, Self-Report Form, completed by Edward Smith, dated April 16, 2025

g) Handwritten document entitled, "Facts, Evidence, and Considerations Relevant to Counts 1 & 2 (Privileged and Confidential)"

h) Handwritten document entitled, "Narrative explaining Count 3 (to the best of my recollection)"

i) Citibank Employment Records

j) Personnel File
  - 2021 – 2024 Mid-Year and Year End Performance Reviews
  - Resume
  - New Hire Disclosure Questionnaire
  - New Hire Background Vendor Report

2. Medical Records:
   a) Medical records from the Federal Bureau of Prisons, dated January 9, 2025, to June 29, 2025

3. Collateral Interviews:
   a) Collateral telephone interview with Mr. Smith's father, Mr. Edward Smith Sr., on August 26, 2025; administration of subtests of the Gilliam Parent Retrospective Forms, 0 to 3, and Childhood
   b) Collateral telephone interview with Mr. Smith's maternal aunt, Ms. Joyce Jackson, on August 27, 2025
   c) Collateral telephone interview with Mr. Smith's wife, Ms. Heather Rodgers, on August 27, 2025

## **Methodology:**

This forensic psychological evaluation draws upon multiple sources of information to ensure a comprehensive and objective assessment. These sources include a direct clinical interview with Mr. Smith; behavioral observations made during the course of the evaluation; administration of the Minnesota Multiphasic Personality Inventory – 3 (MMPI-3) and subtests of the Gilliam Parent Retrospective Forms, 0 to 3, and Childhood (completed by Mr. Edward Smith, Sr.); and a review of collateral information cited herein. All data were evaluated for consistency across sources, and consideration was given to the potential for response bias, impression management, or other factors that may affect reliability. This report summarizes my professional analysis and opinions and does

not purport to represent all the information and data derived from the comprehensive psychological evaluation process. Findings and opinions are offered with a reasonable degree of psychological certainty, based on the information available at the time of the assessment.

Of note, medical records were requested from Mr. Smith's prior psychotherapist, identified as "Jenkins," with whom he engaged in treatment as a condition of bail. Records were additionally requested from Mr. Smith's primary care physician, Jonathan Sack, M.D. However, these records were not received prior to the completion of this report. Should these records arrive following completion of this report, they will be thoroughly reviewed, and an addendum will be submitted if deemed necessary.

### Summary of Relevant Background:
*The following information is derived from Mr. Smith's self-report during the present evaluation and supplemented, where available, with collateral sources. Statements attributed to Mr. Smith or his family reflect their own reports and should not be interpreted as objective fact.*

Mr. Edward Smith is a 50-year-old African American man, born on ███████████, in Oklahoma City. He denied complications at birth, major childhood illnesses, or developmental delays. Collateral reports from family members confirmed that he achieved developmental milestones within expected timeframes. Mr. Smith's father reported no concerns regarding Mr. Smith's language development or social engagement and stated that Mr. Smith's mother and Mr. Smith's pediatrician likewise never identified any such difficulties.

Mr. Smith reported that he was raised in a stable household with his parents and sister and described positive family relationships that have persisted into adulthood. Mr. Smith denied a maternal or paternal history of mental illness or substance abuse related issues. He reported that his sister has ████████████████████████████████████, and that he became aware earlier this year that she had previously been diagnosed with ████. Mr. Smith denied any history of food insecurity, housing instability, or involvement with child welfare services. He reported exposure to ████████████████████████████ ████████████████████████████████ He acknowledged witnessing episodes of ████ ████ between his parents, perpetrated by his ████; specifically, he described that his ████ ██████████████████████ approximately once or twice per month. He noted that police intervention was required on several occasions. Mr. Smith indicated that his father was never violent with him and otherwise denied a history of childhood trauma, abuse, or neglect.

Mr. Smith began his education in the public school system before transferring to a private middle school in recognition of his strong academic abilities. He later attended the Oklahoma School of Science and Mathematics, where he graduated from high school in 1993. He went on to Harvard University, where he earned a bachelor's degree in physics in 1997 and graduated cum laude. Mr. Smith denied academic delays, learning problems, or the need for educational accommodations, and reported that teachers never expressed concerns about his performance (academic, behavioral, or interpersonal) or referred him for additional supportive services.

Mr. Smith described positive and stable social functioning throughout childhood. He reported that he maintained close relationships with extended family and reported a small but consistent circle

of friends across developmental stages, including several with whom he remains in contact. He enjoyed a range of shared activities with peers and participated in organized football through middle school and the early years of high school. He denied any history of bullying, social rejection, or difficulty forming or maintaining friendships. Mr. Smith reported that he never felt "strange or misplaced," and consistently maintained high self-esteem. He reported that neither family members nor teachers ever raised concerns regarding his social skills.

Mr. Smith's description of his childhood social history was consistent with reports provided by both his father and maternal aunt. Mr. Smith's father and aunt reported no concerns regarding his developmental, social, or emotional functioning during childhood.

Following graduation, Mr. Smith began his career in consulting at Oliver Wineman, a management consulting firm, where he remained until 2010. He reported performing well in this role and being promoted to partner. He subsequently advanced through a series of positions in banking and finance, including roles at State Street Bank, BlackRock, and Citibank. He described his career trajectory as one marked by increasing responsibility, leadership, and consistently favorable performance evaluations. At the time of his arrest, Mr. Smith was employed at Citibank as a Managing Director in capital risk analytics, a position he had held since 2021. He was terminated following his arrest for the instant offense. Apart from this termination, he denied ever having been fired from an employment. He reported a history of consistent financial stability. Mr. Smith reported enjoying positive relationships with colleagues and denied experiencing interpersonal problems, noting that "most of my staff enjoyed working with me." Mr. Smith further denied workplace conflicts, the need for accommodations, disciplinary actions, or complaints from coworkers.

Performance reviews from Citibank between 2021 and 2024 documented good performance, and noted Mr. Smith's technical expertise, leadership and execution skills, and ability to build credibility and relationships with stakeholders. There was no indication of workplace accommodations, interpersonal difficulties, or significant concerns.

Mr. Smith has resided in several states, including New York, Massachusetts, Oklahoma, Georgia, and South Carolina. Mr. Smith reported that he has been in a relationship with his wife, Ms. Heather Rodgers, since the early 2000s, and they married in 2012. Ms. Rodgers has two daughters from a prior relationship, with whom Mr. Smith reported being actively involved since their childhood; he described his relationship with them as close. Mr. Smith's wife described Mr. Smith as a loving and compassionate partner who is consistently supportive in their relationship.

With respect to his adult social functioning, Mr. Smith reported maintaining several long-term friendships and expressed satisfaction with his social life. He described having a small group of close friends with whom he remains in regular contact, noting that he enjoys spending time with them socially while also valuing solitary activities. In his free time, he reported engaging in hobbies such as playing piano, reading, racetrack driving, and building with Legos. Collateral reports from Mr. Smith's father and aunt did not indicate any impairments in socialization, communication, or interpersonal functioning in adulthood.

Mr. Smith reported that he had never seen a psychiatrist or psychologist prior to his arrest for the instant offense and had never been diagnosed with a mental illness or neurodevelopmental disorder. He reported briefly experimenting with Klonopin (a benzodiazepine) in 2021, which he purchased online without a prescription. Mr. Smith reported that he did so to manage situational anxiety related to starting a new job. He stated that he tried the medication only a few times, found it minimally effective, and subsequently discontinued it. Following his arrest, he engaged in a short course of psychotherapy as a condition of bail; records of this treatment were not available for review at the time of this report. Aside from this, he denied any history of psychiatric or psychological treatment.

Mr. Smith denied symptoms consistent with mood, anxiety, trauma-related, psychotic, or obsessive–compulsive disorders, and reported no history of clinically significant distress or functional impairment related to his mental health. He denied intrusive thoughts, compulsive behaviors, stereotyped or repetitive motor behaviors, repetitive use of objects or speech, rigid adherence to routines, circumscribed interests, and sensory sensitivities. He stated that he values and prefers routine and structure, but is able to adapt flexibly when routines are disrupted and does not experience associated difficulties. He described himself as resilient in managing stressors. Mr. Smith's father, aunt, and wife indicated that he has not exhibited psychological symptoms that have impaired his functioning or required mental health treatment. Mr. Smith's wife reported that he prefers routine and structure but is able to adapt when unexpected changes occur.

Mr. Smith reported occasional alcohol use beginning in early adulthood, averaging one to two times weekly, without associated problems. He denied other substance use.

He reported no significant medical history. Mr. Smith's medical records from treatment in the community were not available for review at the time of this report. Federal Bureau of Prisons records (January through June of 2025) documented no significant past medical history, aside from prediabetes noted on screening, and a history of moderate alcohol use prior to incarceration (approximately two drinks daily). According to the records, Mr. Smith reported that his father had no significant medical history, his mother died at age 49 from a brain tumor, and his sister has ████████. No medical treatment was provided during the reviewed period, and no medications were prescribed.

With respect to his mental health, records from the Federal Bureau of Prisons indicate no psychiatric complaints, no abnormalities on mental status examinations, and denial of prior mental health treatment (i.e., Mr. Smith did not report prior treatment).

Mr. Smith identified as heterosexual. Mr. Smith reported that he began dating in high school and had several long-term relationships prior to marrying his wife. Since becoming sexually active in approximately 1999, he reported involvement with over one hundred sexual partners, whom he met through both online platforms and in-person encounters. Mr. Smith acknowledged longstanding difficulty with monogamy. He stated that he began engaging in transactional sexual relationships around 2005 and continued to do so throughout adulthood. Specifically, Mr. Smith reported a history of hiring escorts and engaging in "sugar baby" relationships, in which it was understood that he would provide financial support in exchange for companionship and physical/sexual intimacy.

For approximately five years prior to the instant offense, Mr. Smith reported engaging in extramarital affairs on average about twice per month. He described involvement with a variety of women and reported that he maintained a rotation of approximately five to ten partners. He reported that these encounters were not typically with random strangers; rather, he most often met partners online and developed some form of ongoing relationship with them. He noted that, over the past several years, several women lived with him in his New York City apartment for extended periods of time.

Mr. Smith reported exposure to pornography at approximately age 12 or 13 through his father's magazines. Mr. Smith reported a longstanding pattern of pornography use, at times daily and generally several times per week, averaging four to five hours weekly. He reported masturbating on a daily basis. He reported that, over time, he accessed pornography through a wider range of online platforms, including applications such as Telegram channels. Mr. Smith characterized his sexual preferences and interests in pornography involving women as broad and variable, noting that they have evolved over time. Mr. Smith reported that he enjoyed viewing heterosexual pornography involving adults ages 18 to 35 with varying themes, including group dynamics, fantasy-based plotlines (e.g., science-fiction themes), depictions of sleeping women, and bondage, the latter of which he stated he has incorporated into his own sexual activity within consensual contexts. He reported purchasing sex toys and bondage related items, which he retained and utilized during sexual encounters. Mr. Smith reported viewing pornography categorized under the "teen" genre but specified that his preferences were limited to actors 18 and up. Mr. Smith denied any sexual fantasies or interests in minors.

Mr. Smith reported that he had no history of arrest prior to the instant offense.

**Mental Status Examination and Results of Psychological Assessment**

Mr. Edward Smith is a 50-year-old African American man, born ███████████. At the time of the evaluation, he appeared his stated age, was appropriately groomed, and dressed in facility-issued clothing. He was alert and fully oriented to person, place, and time. Throughout the examination, he was engaged, cooperative, and presented as deliberate and thoughtful in his responses. His eye contact, social reciprocity, and interpersonal behaviors were within normal limits. No cognitive deficits were evident in the course of conversation. Mr. Smith's mood was described as stable, and his affect was congruent, stable, and displayed a full range. Speech was generally normal in rate, rhythm, and volume, though noted to be somewhat monotone. His thought processes were logical, organized, and goal-directed. He denied current symptoms of mental illness, and none was observed during the evaluation. He further denied suicidal ideation, intent, or behavior.

Mr. Smith was virtually administered the Minnesota Multiphasic Personality Inventory-3 (MMPI-3), an objective self-report measure designed to provide a comprehensive assessment of a test taker's psychological functioning. He produced a valid MMPI-3 protocol. The results did not reveal evidence of somatic, cognitive, thought, or behavioral dysfunction. Clinically, his profile was notable for compulsive traits, including rigidity and perfectionism. Additionally, the results reflect tendencies toward self-importance and acclaim-seeking, characterized by a sense of

superiority and arrogance. Interpersonally, he reported discomfort in social settings, a preference for solitude, and limited interest in group activities.

## Summary and Opinion

Based on the available data as described above, it is my professional opinion that Mr. Smith does not meet the criteria for any psychiatric disorder as defined by the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision (DSM-5-TR). His psychiatric history is absent for any formal or sustained treatment prior to the instant offense. He consistently denied past or current psychiatric symptoms, including disturbances in mood, anxiety, thought processes, or behavior, and described no episodes of clinically significant distress or impairment in daily, occupational, social, or relational functioning, the latter of which is required to meet criteria for any diagnosis in the DSM-5-TR. These self-reports were corroborated by collateral informants, including family members and his spouse, who likewise reported no evidence of psychiatric disturbance or impaired functioning at any point in his development or adult life. Mr. Smith's academic, occupational, social, relational, and adaptive functioning are strong, and he has demonstrated the ability to manage demands effectively.

It is my professional opinion that Mr. Smith does not meet the criteria for any neurodevelopmental disorder. His developmental history, educational trajectory, occupational record, and social functioning are not consistent with autism spectrum disorder. He reported no history of early developmental delays, difficulties in language acquisition, or problems with reciprocal social engagement. He likewise denied patterns of restricted or repetitive behavior, sensory sensitivities, or inflexible adherence to routines that interfere with his functioning. Collateral informants, including family members and his spouse, corroborated this account.

The primary area of clinical relevance in light of the charges against him is Mr. Smith's sexual history. He reported a longstanding pattern of regular pornography use beginning in adolescence, difficulty with monogamy, and hundreds of sexual partners. These features are suggestive of hypersexuality. In addition, elements of his reported preferences (e.g., bondage, fantasy-based content, and arousal to depictions of unconscious women) may be conceptualized within the spectrum of paraphilic interests. Furthermore, although Mr. Smith explicitly denied any sexual interest in minors, such statements are self-reported and cannot be regarded as objective evidence. His reported use of "teen" pornography genres, the discovery of children's clothing among his belongings, and the nature of the alleged conduct in the instant offense collectively may be indicative of a sexual interest in minors.

With respect to Dr. Sperry's evaluation provided by defense counsel, I disagree with her conclusions. Her methodology does not meet accepted standards of forensic psychological assessment, and her professional background as a Board-Certified Behavior Analyst does not provide the qualifications necessary to independently render DSM-5-TR psychiatric diagnoses. Her evaluation is also limited in scope and does not assess the full range of Mr. Smith's functioning or adequately take into account the objective evidence regarding his life circumstances and abilities. Although she references autism spectrum disorder, she does not render a DSM-5-TR diagnosis, nor does she provide evidence that Mr. Smith had ever previously received such a

diagnosis. Further, Dr. Sperry references "hoarding" in vague, non-clinical terms, without applying or acknowledging the DSM-5-TR diagnostic criteria, which Mr. Smith does not meet.

Dr. Sperry's report substantially overstates the extent of Mr. Smith's alleged impairment and fails to account for significant contradictions between her conclusions and the documented record of his functioning. Her interpretation of psychological test results is presented without adequate critical evaluation or integration with Mr. Smith's demonstrated abilities. Psychological testing is only one component of a comprehensive forensic psychological evaluation. Test results must be considered in conjunction with clinical history, collateral interviews, records, and observed behavior in order to determine whether they accurately reflect an individual's functioning. Many of the measures Dr. Sperry administered are face-valid, meaning that the items are transparent and can be easily answered in a way that exaggerates impairment if the respondent chooses. For example, while Dr. Sperry cites Vineland-3 ratings provided by Mr. Smith's wife that suggest his functioning is equivalent to that of a young child. she does not reconcile this with the broader evidence of his sustained academic achievement, professional advancement to a senior leadership role, stable interpersonal relationships, and independent daily functioning – all of which directly contradict such an extreme level of impairment.

More broadly, it would be atypical for an individual to first receive a diagnosis of a severe developmental condition at the age of 50, particularly in the context of such documented achievements. Conditions of the severity described in Dr. Sperry's report are typically identified much earlier in life, as they interfere with educational progress, occupational functioning, and adaptive skills.

Finally, Dr. Sperry's analyses are predicated on generalized assumptions regarding autism spectrum disorder; however, Mr. Smith does not meet diagnostic criteria for this condition. It is my professional opinion that, because Mr. Smith does not have autism spectrum disorder, theoretical considerations regarding the impact of autism spectrum disorder on alleged suggestibility, comprehension, or responsiveness during a law enforcement interview, or in other potentially stressful contexts, are not clinically applicable to Mr. Smith.


**Miranda Rosenberg, Psy.D., PLLC**
Licensed Clinical Psychologist
Adjunct Assistant Professor of Clinical Psychology, Ferkauf Graduate School of Psychology, Yeshiva University